IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────

BRUCE FREELAND,

                Plaintiff,                    OPINION & ORDER

  v.

                                                           11-cv-053-wmc

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

                Defendant.
───────────────────────────────────────────────────────

      Plaintiff Bruce Freeland filed this action seeking reinstatement of his long-term disability benefits under an employee group plan. Freeland claimed that defendant Unum Life Insurance Company of America ("Unum") wrongfully terminated his benefits in violation of ERISA (29 U.S.C. §§ 1001 *et seq.*). Freeland also claimed that Unum arbitrarily and capriciously invoked the plan's two-year cap on "disabilities due to mental illness" against him. In response to the parties' cross motions for summary judgment, this court (1) granted summary judgment to Freeland on his claim for wrongful benefit termination, finding that Unum acted arbitrarily and capriciously in terminating his benefits; but (2) granted summary judgment to Unum on the two-year cap issue, finding that its decision to apply that cap to Freeland was reasonable. (Opinion & Order (dkt. #38) 24-32). Accordingly, the court ordered reinstatement of Freeland's benefits, but only for the one year remaining under the cap. (*Id.* at 32-33.) The court also found an award of reasonable attorney's fees and prejudgment interest was appropriate. (*Id.* at 34-35.)

      Freeland has since submitted his claim of reasonable attorney's fees (dkt. #39), to which Unum objected on multiple grounds (dkt. #45). Freeland requests a total award of

$43,185.00 for a total of 107.5 hours' work on this litigation.[1] Unum argues that the number of hours and hourly rates are unreasonable and must also be adjusted downward on the fact that Freeland was only partially successful.

Both parties also briefed the question of how prejudgment interest should be calculated (dkt. ##40, 44). The parties agree that the amount of past due benefits payable is $7,825.92 (one year of benefits at $652.16 per month), but disagree on the proper rate for calculating prejudgment interest due on those benefits: Unum requests an interest rate of 3.25%, consistent with the prime rate, while Freeland requests a rate of 12%, consistent with Wis. Stat. § 628.46.

While Freeland is certainly entitled to attorney's fees, the court finds that he has failed to meet his burden of demonstrating the reasonableness of the requested hourly rates, and that some hours were not reasonably billed and must be subtracted from the lodestar calculation. Finally, the court also finds that it is appropriate to reduce the total fee award by 50% in light of Freeland's partial success on the merits in this case. As to interest, the court has determined that a statutory rate of 12% simple interest is an appropriate rate for prejudgment interest purposes.

OPINION

**I. Attorneys' Fees Award**

To determine reasonable attorneys' fees, at least outside the class action setting, the court generally uses the lodestar method, set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433

---

[1] Freeland's initial request was for fees for 106.2 hours of work, totaling $42,470 -- 103.7 hours on the litigation, and 2.5 hours on the fee petition. (*See* Mot. for Attorney's Fees (dkt. #39) 2.) In his response to Unum's calculation of prejudgment interest (dkt. #44), he modifies that request to include an additional 1.3 hours of work devoted to preparing that response.

(1983). This approach "forms the 'centerpiece' of attorneys' fees determinations." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Id.* (citations omitted).

The lodestar starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The party seeking the fee award must prove both the reasonableness of the hours worked and the hourly rates claimed. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (citing *Hensley*, 461 U.S. at 433). The district court also "has an obligation to 'exclude from this initial fee calculation hours that were not reasonably expended' on the litigation." *Id.* (quoting *Hensley*, 461 U.S. at 434) (internal quotation marks omitted). Once the court has reached the starting point articulated in *Hensley*, it "may then increase or reduce the modified lodestar amount by considering a variety of factors, the most important of which is the 'degree of success obtained.'" *Id.* (internal citations omitted).

Unum challenges the number of hours and the reasonableness of the rates as well as the degree of success. The court considers each of these challenges in turn to determine whether Freeland has demonstrated the reasonableness of his request.

### A. Reasonableness of Hourly Rates

A reasonable hourly rate is defined as "one that is 'derived from the market rate for the services rendered.'" *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). When an attorney can prove an actual billing rate for similar litigation, that rate is presumptively appropriate for use as the market rate. *Id.*

3

Alternatively, the fee applicant can meet the burden of producing satisfactory evidence by proof that the requested rates are in line with those prevailing in the community. *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If the applicant comes forward with either type of proof, the burden shifts to the challenging party "to offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996)).

Here, Freeland's counsel, Mark DeBofsky, seeks reimbursement at hourly rates of $150 per hour for the work of two law student clerks, $350 per hour for the work of an associate, and $550 per hour for his own work. He states in his motion for fees that these are the rates that he *would* currently charge clients for the types of services performed in this case and provides an opinion in which the District Court for the Northern District of Illinois awarded him fees at a rate of $500 per hour, with law clerks receiving $100 per hour and an associate (with one more year of experience than the associate in this case) receiving $375 per hour. *See Holmstrom v. Metro. Life Ins. Co.*, No. 07-cv-6044, 2011 WL 2149353 (N.D. Ill. May 31, 2011).

Defendant argues that "[i]n determining the proper hourly rate, the court must try to determine the 'prevailing market rates in the relevant community' for the services rendered." *Johnson v. Daley*, 117 F. Supp. 2d 889, 904 (W.D. Wis. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Defendant points out that DeBofsky has submitted no evidence attesting to the reasonableness of the hourly rates he seeks in the Madison community. While this is true, the Seventh Circuit has held that "if an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount." *Mathur v. Bd. of Trs. of*

4

*S. Ill. Univ.*, 317 F.3d 738, 743-44 (7th Cir. 2003). Thus, while the hourly rates DeBofsky seeks are not in line with rates in the Madison area, the court declines to reduce his rate on that ground alone. *Cf. Torgeson v. Unum Life Ins. Co.*, No. C05-3052-MWB, 2007 WL 433540, at *6 (N.D. Iowa Feb. 5, 2007) ("While it is true that a fee of $425.00 an hour is high for Iowa, the affidavits submitted by the plaintiff's counsel demonstrate that Mr. DeBofsky has not only a nationwide ERISA practice, but also a highly specialized knowledge of ERISA law[.] . . . Consequently, the court concludes that, in light of the plaintiff's attorney's experience and qualifications and the nature of the litigation, an hourly rate of $425.00 for Mark DeBofsky's services is appropriate.").

Still, even accounting for DeBofsky's recognized expertise in ERISA litigation (with which defendant does not quarrel), the rates that Debofsky seeks do strike the court as quite high, particularly in comparison to the rates of defendant's three attorneys, which are $105 per hour, $185 per hour, and $225 per hour. (*See* Terrance J. Wagener Aff. (dkt. #51) ¶ 3.) Additionally, as defendant points out, DeBofsky has not provided the court with the kind of evidence that usually supports these types of requests: for instance, he has attached no affidavits from other attorneys suggesting that a rate of $550 per hour is reasonable, nor has he presented billing statements demonstrating that clients have *actually* paid him that amount. Even the *Holmstrom* decision, the sole evidence he offers in support of his rate, would support no more than DeBofsky's entitlement to a rate of $500 per hour, and the court has been made aware of no change in this depressed legal market or in Debofsky's skill set that would support the $50 per hour increase that he now requests for himself and his law clerks. Therefore, the court finds that hourly rates of $500 for DeBofsky's work, $350 for the associate's work (taking into account that she has one fewer

5

year of experience than the associate in *Holmstrom*), and $100 for the law clerks' work are reasonable, although still on the high side, and will adopt them for the lodestar calculation.

## B. Reasonableness of Hours

Freeland seeks fees on a total of 107.5 hours of work on this case. Unum challenges specific time entries as well as the total hours expended on summary judgment, arguing that the court should "sharply" reduce the number of hours expended on this litigation in light of plaintiff's counsel's expertise in ERISA litigation and to the nature of this lawsuit, which Unum contends is "not 'unique.'"

Looking at the itemization of hours as a whole, it does not appear that 107.5 hours of work on this litigation is excessive in and of itself. Indeed, defendant's counsel has submitted his own billing records at the request of the court (dkt. #51), revealing a total of 93.3 hours billed through September 2013. This relatively small difference does not support Unum's claim that plaintiff's counsel failed to exercise billing discretion. Likewise, while defendant takes issue with the 79.9 hours of work expended at the summary judgment phase, and asks the court to reduce those hours by "at least half," the court is not convinced that such a blanket reduction is appropriate where counsel filed a brief supporting his motion for summary judgment of about 21 pages; a reply brief of about 20 pages; 27 pages of proposed findings of fact; and responses to defendant's own 110 findings of fact and 4 conclusions of law.

Defendant argues that the case was not unique and did not merit the time expended, but the cases it cites in support all involve far more egregious requests. *See Derksen v. CNA Grp. Life Assurance Co.*, No. 04-3411, 2006 U.S. Dist. LEXIS 46245, at *17-18 (D. Minn.

July 6, 2006) (finding request for 402.4 hours in a "straight-forward appeal from a denial of disability benefits" unreasonable); *Nelson v. Metro. Life Ins. Co.*, No. 07-2326, 2010 Dist. LEXIS 128438, at *32-35; *42-46 (D. Minn. Dec. 22, 2009) (98.25 hours of research reduced by approximately half; 44 hours on summary judgment motion reasonable, but additional 40 hours on response and reply reduced by half to reflect time spent on arguments with no support in the law of the governing circuit). Ultimately, the total hours Freeland's counsel devoted to this case do not strike the court as unreasonable.

Turning to Unum's specific challenges, Unum first asks the court to cut the time for drafting plaintiff's Rule 26(a)(1) disclosures down to one hour, from 5.5 hours. Plaintiff points out that the disclosures were drafted by a law student, and that the student had to review a voluminous record in order to find the information required under Rule 26(a)(1). Though a more experienced lawyer might have done the required review of the record in less time, the fact that these hours were billed at a much lower rate convinces the court that this was an appropriate exercise of billing discretion.

Additionally, Unum asks the court to deduct fees associated with plaintiff's unsuccessful Rule 56(d) motion to stay summary judgment. While courts may lower a fee award based on a partial success, *Hensley*, 461 U.S. at 435-36, the focus is on the *overall* results in the case, not on each and every motion and argument. "Where a plaintiff has obtained excellent results, . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435. To the extent that defendant questions plaintiff's success *in the lawsuit as a whole*, that challenge is well taken and will be discussed below, but the court will not second-guess reasonable litigation tactics by reducing hours in the lodestar calculation simply because Freeland did

not prevail on a particular *motion*. *Cf. Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1091 (7th Cir. 2012) (no abuse of discretion in awarding full amount of fees where plaintiff "lost a few skirmishes along the way, but in the end, his victory was complete").

Defendant's specific objections to a few time entries are more persuasive. First, the court agrees with defendant that hours spent on purely administrative tasks should not be included in the fee award. *See Spegon*, 175 F.3d at 553 (noting that "the court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel 'on tasks that are easily delegable to non-professional assistance'") (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)). Defendant objects to the following time entries, all of which were billed by the associate at a rate of $350/hour:

- 05/18/2011: 0.4 hours on "printing def's MSJ briefs and saving in TM; emailing MDD about deadli[nes]"
- 05/31/2011: 0.4 hours on "final review and efiling of MSJ, MSJ memo, SOF and SOF response"
- 06/01/2011: 0.4 hours on "per Natalia's conversation with clerk, refiled Memo as brief in oppositi[on]"
- 06/20/2011: 0.4 hours on "efiled response to motion to strike reply"
- 06/20/2011: 0.8 hours on "finalized reply brief; efiling"

For time entries involving only e-filing, the court agrees that those represent purely administrative tasks. Therefore, 0.4 hours on June 1st and 0.4 hours on June 20th will be deducted. The three remaining time entries contain a mixture of purely administrative tasks, such as printing and e-filing, and tasks that would not normally be delegated to non-

8

professional assistance, such as setting internal deadlines and performing final review of documents before filing. Because plaintiff does not provide a breakdown of the time spent on these disparate tasks in each entry, the court will split the difference and reduce the total by 0.2 hours on May 18th, 0.2 hours on May 31st, and 0.4 hours on June 20, 2011.

Finally, defendant challenges the amount of time that plaintiff's lead counsel devoted to editing summary judgment submissions. "[D]uplicative and excessive time, not reasonably billed to one's own client, cannot be billed to an adversary through a fee-shifting statute." *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). Defendant argues that the following hours spent by lead counsel in editing are excessive: a total of 7.2 hours for editing the initial summary judgment brief and proposed findings of fact; 4.2 hours for editing of the response to defendant's proposed findings of fact; and 9.2 hours for editing the reply brief. Given the amount of time an experienced associate already spent in *drafting* these submissions, in conjunction with the 8.5 hours DeBofsky spent reviewing the claim file and preparing an initial memo regarding strategy (which presumably should have guided the associate in drafting the filings), the court finds 20.6 hours of editing quite high, but has no sound basis to say these hours are unreasonable on their face, and defendant offers nothing more in support of a reduction.

## C. Reduction for Partial Success

Unum also argues the fee award should be adjusted downward to account for Freeland's partial success in the case, pointing out that he originally (1) sought monthly benefits from the date of discontinuation until age 66 on the theory that the 24-month mental illness limitation should not apply, and (2) sought to preclude Unum from offsetting

9

his monthly benefits. Because the court ultimately rejected both those arguments, Freeland's recovery was limited to a net monthly benefit increase of $652.16 up to the policy limitation of twelve months, rather than the $3,902.69 per month for *three* years. Based on this limited success, Unum asks the court to adjust any fee award downward.

In *Hensley*, the Supreme Court noted that, while attorneys should fully recover fees when they have "obtained excellent results," a lesser degree of success may justify a downward departure.

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 435-36; *accord Spegon*, 175 F.3d at 557-59 (district court did not abuse its discretion in reducing modified lodestar amount by one-half based on "limited nature of the relief obtained").

Freeland contends that the applicable standard for fee awards is the achievement of "some degree of success on the merits," citing to *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S. Ct. 2149, 2159 (2010). In *Hardt*, the Supreme Court was considering whether to award fees *at all* in a case where plaintiff had been denied summary judgment but received a favorable remand that resulted in an award of benefits. *See id.* at 2158-59. The Court never actually held the fee amount was excessive in that case, finding instead that Reliance "ha[d] not preserved any separate objection to the reasonableness of the amount of fees awarded." *Id.* at 2159 n.9. Thus, *Hardt* offers little by way of analysis on

10

whether a downward adjustment of the lodestar amount is appropriate given Freeland's limited success in his case.

Freeland also cites to *Holmstrom* and *Raybourne* as examples of cases in which the district court awarded fees for the entire litigation even where plaintiffs were unsuccessful as to some arguments. As previously discussed, these cases are readily distinguishable. In both *Holmstrom* and *Raybourne,* the plaintiff had a single goal -- reinstatement of benefits -- and accomplished that goal entirely, even though certain *arguments* and *motions* failed along the way. *See id.* at 1091 ("Raybourne had one claim and one theory throughout the litigation. He sought to reverse the company's determination that he was no longer eligible for long-term disability benefits and he achieved that goal in its entirety."); *Holmstrom*, 2011 WL 2149353, at *5-*6 (failure on argument as to standard of review and in seeking preliminary injunction did not warrant reducing fee award). In contrast, Freeland sought reinstatement of benefits, while also arguing that he should not be subject to the 24-month cap on payments for a disability due to mental illness. He prevailed on the first goal, but not the second, entitling him to benefits for one additional year instead of three. Freeland was also unsuccessful in his argument that his payments should not be subject to offsets, again reducing his recovery significantly. This is why, when determining whether to award fees at all, this court recognized that it "found in favor of both parties on significant issues in this case." (Opinion & Order (dkt. #38) 35.)

Given that Freeland was able to recover less than half of what he sought monthly for roughly one-third the time he sought, an even greater reduction could be justified.[2] As

---

[2] Freeland sought an award in the amount of $3,902.69 per month (equal to 66.67% of his pre-disability earnings less a $2,127.00 offset for SSDI), arguing that to offset his benefits based on his

11

Freeland points out, however, a fee award need not be proportional to the amount recovered, since even small violations of certain laws should be "checked through private litigation." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009). Fee-shifting encourages plaintiffs to bring cases like this one and helps to "discourage petty tyranny." *Id.* (quoting *Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir. 1992)). To further those goals, while recognizing that plaintiff's counsel also spent substantial time on unsuccessful claims that Unum was forced to defend before ultimately prevailing, the court will reduce plaintiff's overall award of attorney's fees by only half.

Thus, the court calculates the appropriate fee award as follows:

| Attorney | Hourly Rate | Hours Expended | Award |
|---|---|---|---|
| Law Clerk Hours | $100 | 12.1 | $1,210.00 |
| Associate Hours | $350 | 53.9 | $18,865.00 |
| DeBofsky Hours | $500 | 39.9 | $19,950.00 |
| **Subtotal (Before 50% Reduction for Partial Success)** | | | $40,025.00 |
| **TOTAL AWARD (After 50% Reduction for Partial Success)** | | | $20,012.50 |

## II. Prejudgment Interest

This court previously found that Freeland is entitled to prejudgment interest on his withheld benefits. (Opinion & Order (dkt. #38) 33.) The parties have proposed different

---

pension would be inequitable. He also argued that, if the court denied him reinstatement of benefits, he should receive a refund of the SSDI offsets. The court awarded him benefits subject to both SSDI and pension offsets, in the amount of $652.16 per moth. Freeland also argued he was potentially entitled to benefits for up to three more years, for a total of 48 months. (*See* PPFOF (dkt. #23) ¶ 28.) The court applied the two-year mental illness cap and awarded him benefits for just one more year, since he had already received one year of benefits.

rates for the calculation of the amount of interest owed. Freeland asks for interest at a statutory rate of 12% per annum for overdue insurance claims pursuant to Wis. Stat. § 628.46.[3] Unum argues that the Wisconsin statute is preempted by ERISA and that the proper rate is the prime rate under the Seventh Circuit's default rule. *See First Nat'l Bank of Chi. v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999) ("Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest. . . . We hold today that to set aside this practice and award something other than the prime rate is an abuse of discretion, unless the district court engages in such a refined calculation.") (internal citations omitted). The court agrees that an award of statutory interest is appropriate here.

Defendant principally points to *Koehler v. Metro. Life Ins. Co.*, No. 06-C-0233, 2007 WL 1960627 (E.D. Wis. Jul. 2, 2007), for the proposition that ERISA preempts claims under Wis. Stat. § 628.46. *See id.* at *1 n.1 (citing *Rud v. Liberty Life Assurance Co. of Bos.*, 438 F.3d 772, 777-78 (7th Cir. 2006) (noting that "parallel state law remedies [under ERISA] are preempted")). This ruling is consistent with ERISA's general preemption clause, which states that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any

---

[3] Wis. Stat. § 628.46(1) reads in relevant part:

> Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. . . . Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment[.] . . . All overdue payments shall bear simple interest at the rate of 12% per year.

13

employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 22 U.S.C. § 1144(a).  Relying on this language, the Eastern District of Wisconsin has held that "there is a concern that applying a state statute [for prejudgment interest] would interfere with ERISA's broad preemptive scope." *Roy v. Forest Cnty. Potawatomi Grp. Health*, No. 03-C-1265, 2005 WL 3372853, at *4 (E.D. Wis. Dec. 12, 2005).

As plaintiff points out, however, *Rud* does not actually address the question of the appropriate *rate* of prejudgment interest -- nor does *Koehler*, which actually granted summary judgment to the *insurer*.  In fact, neither party is able to point to any definitive authority from the Seventh Circuit.  Furthermore, the Second Circuit has held that ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A), operates to save state statutes dealing with "the amount of the payment to which an insured is entitled" from preemption.[4] *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.*, 50 F.3d 144, 151 (2d Cir. 1995); *see also Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 657 (7th Cir. 1992) ("ERISA preempts all state laws which 'relate to any employee benefit plan', unless the state law 'regulates insurance, banking, or securities." (internal citations omitted)).  Various federal district courts have also applied state statutes in determining the appropriate rate of prejudgment interest for ERISA claims.  *See, e.g.*, *Garrett v. Principal Life Ins. Co.*, No. CIV-09-1378-M, 2013 WL 1914632 (W.D. Okla. May 8, 2013) (15% rate), *aff'd*, No. 13-6142, 2014 WL 594079 (10th Cir. 2014); *Billings v Continental Casualty Co.*, No. 02-C-3200, 2003 WL 145420 (N.D. Ill. Jan. 21, 2003) (9% rate without analysis).  Thus, there is at minimum a split of

---

[4] ERISA's saving clause states that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

14

authority as to whether ERISA precludes using Wisconsin's statutory rate for calculating prejudgment interest.[5]

The court finds here that ERISA's savings clause makes it appropriate to use Wisconsin's statutory rate. Certainly, the statute in question appears to regulate the business of insurance and thus would fall within ERISA's saving clause. "[A]s a matter of common sense," § 628.46 regulates insurance: it controls a portion of the insurance relationship by requiring timely payment of claims and is directed at the insurance industry specifically. *See UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 367 (1999) (first step is to "ask whether, from a 'common-sense view of the matter,' the contested prescription regulates insurance"). The second step is to look to what are termed the "McCarran-Ferguson factors as checking points" to determine if a state law is saved. *Id.* at 374. The McCarran-Ferguson factors ask whether the rule: (1) "has the effect of transferring or spreading a policyholder's risk"; (2) serves as an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry. *Id.* at 374-75. Applying those factors, the statute serves as an "integral part" of the policy relationship by encouraging timely payment of claims. S*ee Metro. Life. Ins. Co. v. Massachusetts*, 471 U.S. 724, 728 n.2 (1985) ("Laws regulating aspects of transacting the business of group insurance include, for example, those regulating claims practices or rates."). To the extent this raises the cost to insurers in disputing payments, it also spreads

---

[5] The two cases this court has found from the Western District of Wisconsin, *Wilkes v. Unum Life Ins. Co. of Am.*, No. 01-C-182-C, 2002 WL 32345374 (W.D. Wis. Mar. 18, 2002), and *Chesemore v. Alliance Holdings, Inc.*, 948 F. Supp. 2d 928 (W.D. Wis. 2013), are distinguishable from the present case. In *Wilkes*, the court did not address the question of preemption. Instead, it declined to use § 628.46 because that rate would "surpass the goal of making the plaintiff complete." *Id.* at *1. In *Chesemore*, the court likewise did not address the question of preemption. Plaintiffs sought a 4.633% interest rate, but cited no authority for that rate, and so the court applied the Seventh Circuit's default prime rate. 948 F. Supp. 2d at 948.

those costs from a single policyholder wrongfully denied payment to all policyholders.[6] Finally, as already noted, the statute is limited to entities within the insurance industry.

In light of the Supreme Court's explicit holding that "[n]one of these criteria is necessarily determinative in itself," *id.* at 373 (alteration in original), and given that defendant provides no specific argument as to how applying this rate would "interfere with ERISA's broad preemptive scope," this court adopts the approach of the Second Circuit in *Franklin H. Williams* and finds that Wisconsin's prejudgment interest statute falls within ERISA's saving clause. Accordingly, the court finds that it is appropriate to award Freeland simple interest at the rate of 12% per year, consistent with Wisconsin's prejudgment interest statute. *See* Wis. Stat. § 628.46(1) ("All overdue payments shall bear simple interest at the rate of 12% per year.").

The court has calculated the required interest payment at $3,443.41 ($652.16 x .12 x 44), or approximately $78.26 per month, which appears inconsistent with plaintiff's calculation. The court will enter an award of interest in the amount of $3,443.41, and either party is welcome to move for reconsideration should they object to that calculation.

ORDER

IT IS ORDERED that:

1) plaintiff Bruce Freeland is awarded benefits of $7,825.92, consistent with this court's August 19, 2013 Opinion & Order (*see* dkt. #38);

2) plaintiff shall be awarded reasonable attorney's fees in the amount of $20,012.50, consistent with the opinion above; and

---

[6] What those "costs" are is obviously open to debate, since paying interest at the prime rate arguably adequately accounts for the time value of the delayed payment, but the State of Wisconsin apparently believed other costs (perhaps psychic costs of a wrongful denial) were real or, at least, real enough to induce payment on close claims.

3) plaintiff shall be awarded prejudgment interest in the amount of $3,443.41.

The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 12th day of March, 2014.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge